```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------

RICHARD A. LA VENTURE,

                    Plaintiff,

     -v-                                         6:12-CV-01490

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

---------------------------------

APPEARANCES:                                OF COUNSEL:

OLINSKY LAW GROUP                           HOWARD D. OLINSKY, ESQ.
300 S. State Street
Suite 420
Syracuse, NY 13202

OFFICE OF REGIONAL GENERAL COUNSEL          ELIZABETH D. ROTHSTEIN, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278


DAVID N. HURD
United States District Judge
```

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

Plaintiff Richard A. La Venture ("La Venture" or "plaintiff") brings this action, pursuant to 42 U.S.C. §§ 405(g) of the Social Security Act, to review a final decision of defendant Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB"). The parties have filed their briefs, including the

Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.[1]

## II. BACKGROUND

La Venture filed an application for DIB on December 17, 2008, claiming a period of disability beginning on May 1, 2007. His application was denied on March 9, 2009. At plaintiff's request, a video hearing was held before an Administrative Law Judge ("ALJ") on September 9, 2010.[2] The ALJ rendered a written decision on October 28, 2010, concluding that plaintiff was disabled between May 1, 2007, and November 30, 2008, but that plaintiff's disability had ended on December 1, 2008. On February 24, 2011, plaintiff appealed the ALJ's decision to the Appeals Council. On August 2, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.

La Venture filed this action on September 28, 2012, seeking judicial review of the Commissioner's denial of benefits subsequent to December 1, 2008. Because the parties are familiar with the underlying facts, they are discussed only to the extent necessary to address plaintiff's appeal.

## III. DISCUSSION

### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether

---

[1] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

[2] A video hearing was initially held on June 7, 2010, but was postponed to allow La Venture an opportunity to obtain legal representation. Although he was also unrepresented at the second video hearing, plaintiff has secured representation for this appeal.

the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. See id. Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

### B. Disability Determination—The Five-Step Evaluation Process

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. See 20 C.F.R. § 404.1520. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. Id. § 404.1520(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. § 404.1520(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). Id. § 404.1520(d); see also id. Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. § 404.1520(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(f). The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. Id. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. § 404.1520(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant has the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### C. ALJ's Decision

The ALJ found that La Venture had not engaged in substantial gainful activity since May 1, 2007, the alleged onset date. R. at 15.[3] The ALJ next found that plaintiff's chest wall hernia, history of fractured ribs, chronic obstructive pulmonary disease ("COPD") with chronic pleural thickening, sleep apnea, obesity, gastroesophageal reflux disease ("GERD") with gastritis, and seasonal allergies were severe impairments, but that this combination of

---

[3] Citations to "R." refer to the Administrative Record. ECF No. 9.

impairments did not meet or equal any of the Listings. Id. The ALJ further found that plaintiff retained the RFC to perform sedentary work, "except that [he] could sit for substantially less than 6 hours in an 8-hour workday; was unable to sit for more than 1 hour at a time without having to stand up and move about or lie down due to pain; and should avoid concentrated exposure to dusts, fumes, odors, and other respiratory irritants." Id. Based on these findings and plaintiff's age, education, and work experience, the ALJ determined that no jobs existed in significant numbers in the national economy that plaintiff could have performed. Id. 16-17. Accordingly, the ALJ concluded that plaintiff was disabled from May 1, 2007, to November 30, 2008. Id. 17.

However, the determined that "medical improvement" related to La Venture's ability to work had occurred as of December 1, 2008. R. at 17. Specifically, the ALJ found that plaintiff "can occasionally lift, carry, push or pull 10 pounds; can frequently lift, carry, push or pull less than 10 pounds; can stand or walk, in combination, for about 6 hours in an 8-hour workday with normal breaks; can sit for 6 hours in an 8-hour workday with normal breaks; and should avoid concentrated exposure to dusts, fumes, odors, and other respiratory irritants." Id. 19. Based on these findings and plaintiff's age, education, and work experience, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy. Id. 23. Accordingly, the ALJ concluded that plaintiff's disability had ended on December 1, 2008. Id.

### D. **Plaintiff's Appeal**

#### 1. **The ALJ's Duty to Develop the Record**

La Venture first contends the ALJ breached her heightened duty to develop the record when she failed to obtain a function-by-function medical source statement from plaintiff's

treating physician. Pl.'s Mem. 11.

The ALJ has a duty to affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (citation omitted); see also Sims v. Apfel, 530 U.S. 103, 111 (2000) ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." (citation omitted)). Where, as here, a plaintiff proceeds pro se at the benefits hearing, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir.1980) (citation omitted).

Here, the record contains over two hundred pages of medical documentation. R. at 191-464. Among these records are treatment notes from Frank Kramer, M.D., plaintiff's primary care physician, as well as treatment and follow-up notes from plaintiff's surgeons, Karen McGinnis, M.D., and Randall S. Zuckerman, M.D. See, e.g., R. at 193-220, 306, 320-21, 328-35, 404-64. The record also includes an RFC assessment from Single Decisionmaker T. Haresign. R. at 226-29. Yet despite this otherwise complete medical history, there is no reference in the ALJ's written decision or an indication elsewhere in the record that the ALJ ever considered or even requested medical source statements from Dr. Kramer or any of plaintiff's other treating sources.

The Commissioner argues that the ALJ was not obligated to request these statements because there were no "clear gaps" in the record. Def.'s Mem. 9 (citing Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps . . . and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information." (internal quotation marks omitted))).

However, the Commissioner's regulations explicitly state otherwise. First, 20 C.F.R. § 404.1512(d) provides "[w]e will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."[4] Second, "§ 404.1513(b)(6) states that a treating source's medical report should include '[a] statement about what [the plaintiff] can still do despite [his] impairment(s).'" Robins, 2011 WL 2446371, at *3. Finally, "Social Security Ruling 96-5p confirms that the Commissioner interprets those regulations to mean that '[a]djudicators are generally required to request that acceptable medical sources provide these statements with their medical reports.'" Id. (citations omitted). "In other words, the Commissioner has an affirmative duty to request RFC assessments from plaintiff's treating sources despite what is otherwise a complete medical history." Johnson v. Astrue, 811 F. Supp. 2d 618, 630 (E.D.N.Y. 2011) (citation omitted).

Indeed, district courts within this Circuit have "routinely recognized that ALJs have an affirmative duty to request medical source statements from a plaintiff's treating sources in order to develop the record, regardless of whether a plaintiff's medical record otherwise appears complete." Battaglia v. Astrue, No. 11 Civ. 02045(BMC), 2012 WL 1940851, at *7 (E.D.N.Y. May 29, 2012) (collecting cases); see also Lawton v. Astrue, 1:08-CV-0137 LEK/DEP, 2009 WL 2867905 (N.D.N.Y. Sept. 2, 2009) (Kahn, J.) ("The record, however, contains neither a physical RFC assessment nor a medical source statement pertaining to plaintiff's physical capabilities, let alone one from a treating source. When critical record voids exist, an ALJ is duty bound to take measures to complete the record and fill the

---

[4] The "Application Summary For Disability Insurance Benefits" contained in the Administrative Record contains an authorization to release La Venture's medical records. R. at 104-07.

perceived gaps." (citations omitted)); Dickson v. Astrue, No. 1:06-CV-0511(NAM/GHL), 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) (Mordue, C.J.) (where none of plaintiff's treating physicians had opined on plaintiff's functional abilities, "the ALJ had an affirmative duty . . . to develop the medical record and request that plaintiff's treating physicians assess plaintiff's functional capacity").

Alternatively, the Commissioner argues that these medical source statements were unnecessary because the ALJ's ultimate decision was based on "sufficient" and consistent" evidence. Def.'s Mem. 8 (citing Streeter v. Comm'r of Soc. Sec., No. 5:07-CV-858 (FJS), 2011 WL 1576959, at *4 (N.D.N.Y. April 26, 2011) (Scullin, S.J.)). However, the Commissioner neglects to distinguish an important, and controlling, difference: in Streeter, the Court found that although the record lacked a medical source statement from the plaintiff's treating physician, the ALJ had made reasonable efforts to obtain one by: (1) sending a letter to plaintiff's counsel prior to the hearing advising him about how to obtain such records; (2) requesting a "fully completed Medical Assessment from the physician most familiar with the [plaintiff's] impairments;" and (3) further requesting that if plaintiff's counsel could not obtain the records, to inform the ALJ's office immediately so that the ALJ could request them directly. Id. At the hearing, the ALJ also "specifically asked [p]laintiff's counsel, during the hearing, if the medical records were complete, to which [p]laintiff's counsel responded affirmatively." Id.

Here, the ALJ held an initial video hearing and explained to La Venture the importance of securing legal representation for his benefits claim. R. at 29-30. The ALJ also explained that "[w]e don't develop the records any further for people who aren't represented, because, to be honest with you, a lot of times, people don't show up" and postponed the video hearing

after providing plaintiff with contact information for local legal services. Id. 30-33.

At the second video hearing, La Venture was still unrepresented by counsel. R. at 39. When the ALJ questioned him about this, plaintiff expressed confusion and indicated his belief was that the initial postponement "was more for – to get more of my medical history." Id. Although plaintiff responded in the negative when the ALJ asked whether "there [was] any other evidence that you know of that you'd like me to get after the hearing[ ]," this single statement is not the type of "reasonable effort" contemplated by Streeter.[5]

As a result of this failure to develop the record, the ALJ did not have the benefit of a functional assessment from any of La Venture's treating sources when making findings concerning his RFC. In fact, the only function-by-function RFC assessment in the record signed by T. Haresign, a Single Decisionmaker ("SDM"). Although the ALJ noted that this RFC assessment was "not entitled to any significant weight," (R. at 16), SDMs are not medical professionals and "an RFC assessment from such an individual is entitled to no weight as a medical opinion." Sears v. Astrue, No. 2:11-CV-138, 2012 WL 1758843, at * (D. Vt. May 15, 2012) (collecting cases).

It is hard to imagine how the ALJ could have properly reached her RFC determination in the absence of any medically acceptable assessment of La Venture's limitations. While the ALJ accorded "great weight" to the records of Dr. Kramer in reaching her conclusion, those records do not provide enough information to make a proper RFC determination. As the Commissioner correctly notes, Dr. Kramer observed that plaintiff intended to re-train for

---

[5] If anything, this initial colloquy may have actually misled plaintiff into believing his medical records were complete. Cf. Devora v. Barnhart, 205 F. Supp. 2d 164, 175 (S.D.N.Y. 2002) (remanding for development of the record where ALJ told pro se plaintiff not to "worry" about her treating physician's failure to complete a medical source statement).

work that was not "physically demanding" in February of 2009, that there was "less bulging" on his side than in previous visits in October 2009, and that his progress notes "do not reflect a worsening in clinical signs and findings." R. at 22, 432, 449. However, these progress notes lack any specificity concerning the scope of plaintiff's work-related capabilities and therefore cannot provide a proper basis for the ALJ's finding that plaintiff could perform sedentary work with environmental limitations. See Woodford v. Apfel, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) ("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities."); Sobolewski v. Apfel, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("[T]he burden of proof is on the Commissioner to offer positive evidence that plaintiff can perform sedentary work, and the burden is not carried merely by pointing to evidence that is consistent with his otherwise unsupported assertion.").

"Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of a supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." Felder v. Astrue, No. 10-CV-5745 (DLI), 2012 WL 3993594, at *13 (E.D.N.Y. Sept. 11, 2012) (citation omitted). Accordingly, the case must be remanded.

## IV. CONCLUSION

The ALJ's determinations are based on an inadequate record and her underlying conclusions—that plaintiff experienced medical improvement subsequent to December 1, 2008, and was no longer disabled—are therefore necessarily flawed. On remand, the ALJ should request medical source statements from plaintiff's treating sources that specifically detail his functional limitations, if any, and re-evaluate plaintiff's RFC in light of this additional

information. Because these medical opinions may bear on the ALJ's credibility determination regarding plaintiff's testimony as well as her finding of medical improvement related to the ability to work, these portions of the decision should also be re-evaluated on remand.

Therefore, it is

ORDERED that

1. La Venture's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's determination of no disability subsequent to December 1, 2008, is VACATED; and

2. The matter is REMANDED to the agency for further consideration.

IT IS SO ORDERED.

United States District Judge

Dated: March 20, 2014
     Utica, New York.